John H. Cooke, J.
Mr. Warda and Mr. Bednarek, co-workers at the Chevrolet Plant' on the River Road in. Tonawanda, New York, were driving home after work in Mr. Warda’s automobile on September 28, 1962. Both men worked the same shift, from 6 :30 a.m. to 3:00 p.m. and had frequently driven home together.
As they neared Marker N-2 of the Niagara Section of the Thruway near the Clinton Street Exit, traveling in a southerly direction, an automobile driven by Charles E. Loveall, traveling in the opposite direction, jumped the median strip and collided with the Warda automobile. The time of the accident was approximately 3:45 p.m. and it had been raining. Both men died as a result of the injuries sustained and the testimony indicated that neither claim contains a demand for conscious pain and suffering.
In the opening statements made by counsel for the respective claimants, it was stipulated that the claims against the State of New York be discontinued and that the claims be made only against the New York State Thruway Authority. The claimants maintained that the median strip, in and of itself, .was defectively and negligently constructed in that it was too narrow and not high enough, and as such was deceptive and failed to delineate the middle portion of the highway with sufficient clarity. Further, it was contended that there should have been constructed, at this area of the Thruway, a different type of barrier in the form of a nontraversable type which would deflect an automobile, thus preventing it from crossing over into the opposite lane.
The claims, timely filed, have not been assigned or submitted to any other court or tribunal for audit or determination. Settlements, however, have been made with Mr. Loveall’s carrier to the extent of his coverage.
Mr. Loveall, a deaf-mute, did not recall much about the accident, but indicated his speed to have been approximately 40 miles per hour. 'Subsequent testimony, however, revealed that his speed was in excess of 60 miles per hour and there was no question that he crossed the median causing the collision and *387 subsequent fatal injuries to Mr. Warda and Mr. Bednarek. An eyewitness to the accident, Mrs. Bhoda Cary, whose testimony was uncontroverted, stated the Loveall car was traveling in the far right lane of the northbound lane, failed to negotiate or try to negotiate the curve to the right, cut directly across the middle and curb lane, struck the median, bounced into the air and across it striking the Warda car in the far right lane of the southbound lane. The highway at this point is three lanes north and three lanes south. The questions for this court’s determination are whether there exists a cause of action against the New York State Thruway Authority based upon faulty construction of the Thruway with particular reference to the median strip dividing the flow of traffic and whether, after notice of accidents prior to the present one, the State Thruway Authority was negligent by not then erecting a barrier, sufficient to have prevented the Loveall car from crossing the median strip. Claimants further contend that according to the January 2,1957 specifications, that under the conditions that existed on this section of the Thruway, that a beam-type barrier was required. While these specifications were not a part of this particular contract, claimants contend that the subsequent failure of the Authority to install such a barrier, after notice of 11 cross-over accidents, constituted negligence on its part.
Claimants do not dispute the negligence of Loveall and in effect admitted this to be so. It is obvious this accident would not have happened but for the negligence of Loveall. Claimants contend, however, that the New York State Thruw-ay Authority was also negligent as set forth above.
Testimony showed this portion of the Thruway to have been planned from 1952 through 1956, Construction followed, thereafter, and testimony indicated it was done in accordance with the plans and specifications, and at all points was done in accordance with good engineering practice. Claimants contend the negligence of the New York State Thruway Authority lay in its failure to erect a nontraversalble barrier on the median strip.
At the time of planning and construction, there was no definite criteria relating to barriers in effect anywhere in the country. Barriers were then, and still apparently are, in the experimental stage. Since claimants have been unable to show that the New York State Thruway Authority ■ did not use expert advise and good engineering practices in the planning and construction of this section, they have failed in their burden of showing the New York State Thruway Authority to be negligent in failing to erect the type of barrier they claim would have prevented the accident.
*388 However, it is the further contention of claimants that a number of cross-over accidents on this section and in this area over a period of years served notice upon the New York State Thruway Authority of a dangerous condition and by the New York State Thruway Authority’s failure to then erect a nontraversable barrier, they are -negligent and liable to claimants.
It developed at the trial that from the opening of the Niagara Section of the New York State Thruway in late Summer, 1959, to the date of this accident, there were some 55 cross-over accidents, 11 of which occurred in the vicinity of this accident. A traffic count indicated 20,000 to 25,000 vehicles per day over a 3-year period. There was no endeavor to show similarity of the accidents, but the court admitted into evidence the ,11 accidents in the vicinity of the accident merely for the purpose of showing notice to the New York State Thruway Authority. Negligence, cannot be imputed purely upon notice of accidents alone. The small number of accidents, the large volume of traffic and the proper engineering and construction of the roadway lead this court to the conclusion that the New York State Thruway Authority has complied with its obligation to provide a reasonably safe roadway for the traveling public. To impose an obligation of guarding against the gross negligence of an operator of a vehicle is not within the purview of the decisions of this State. To do so would force the construction of our highways, not for the use and safety of the reasonably prudent motorist, but solely for the purpose of protecting that motorist from the depredations and negligence of the reckless, careless and drunken operator. No such insurance policy has been or can be imposed upon the defendant. The court is satisfied that the section of highway under consideration herein was properly and safely constructed for use by the motoring public and as a result the New York State Thruway Authority has properly executed its obligation.
Claimants cite many cases in their endeavor to rescind the legal principle of proximate cause: Eastman v. State of New York (303 N. Y. 691); Weiss v. Fote (7 N Y 2d 579); Foley v. State of New York (294 N. Y. 275); Robinson v. State of New York (38 Misc 2d 229); Nuss v. State of New York (301 N. Y. 768) among others. In these instances, where recovery against the State was permitted, negligence against the State was also shown. No such showing has been made herein. It is unquestioned in the instant case that, but for the negligence of Loveall, this accident would not have happened. It is not unquestioned in this case, assuming the obligation, that even a non *389 traversable barrier, in its experimental stage, would have prevented this accident. It may have even resulted in other accidents. This is not to say that the New York State Thruway Authority or the State does not have the continuing obligation to restudy, to redesign and to continually search for better and safer highways and to make those already constructed better and safer when and where needed. It does, but these obligations must be directed, not against the violator, but for the vast law-abiding and reasonable users of our highways. The claims herein must be and hereby are dismissed.