[No. 26368-4-I.   Division One.   July 27, 1992.]

RICHARD MEDRANO, *Plaintiff,* v. DAVID A. SCHWENDEMAN, ET AL, *Appellants,* KING COUNTY, ET AL, *Respondents.*

*David A. Schwendeman,* pro se.

*Norm Maleng, Prosecuting Attorney,* and *Michael C. Duggan, Deputy,* for respondent King County.

*Deborah J. Phillips* and *Perkins Coie,* for respondent Puget Sound Power and Light Company.

GROSSE, C.J. — David A. Schwendeman appeals the Superior Court's order granting summary judgment to King County (County) and Puget Sound Power and Light Company (Puget Power). Schwendeman was the driver in a 1-vehicle injury accident on Byers Road. His suit alleged that the County failed to properly maintain the roadway, and further that the design and construction of the road was defective. He also claimed Puget Power negligently located a power pole along the road. The trial court dismissed King County and Puget Power based on the determination that their "acts" were not the legal cause of Schwendeman's accident. We affirm.

In January 1987, Schwendeman and his girl friend had friends over for dinner. He lived in Maple Valley at the end of Byers Road, a dead-end road approximately 1 mile in length. Schwendeman lived on Byers Road for 13 years. The paved portion of Byers Road is 20 feet wide, with shoulders extending out from the paved portion. There are 15 power poles along the road. The posted speed limit is 25 m.p.h.

After drinking beer and dining at his house, Schwendeman and his guests decided to go to a nearby tavern to continue the party. Most of the group rode in the back of Schwendeman's pickup truck, which had a canopy covering the truck bed. Schwendeman drove to the tavern in a man-

ner that was described as rough, fast, and swerving to avoid potholes. After some time at the tavern, the group set out to return to Schwendeman's house. On the way back from the tavern Schwendeman made a right turn onto Byers Road and then "punched the accelerator" causing the passengers riding in the bed of the pickup to be pitched about. The canopy's door was not latched and bounced open. One passenger crawled up to the window of the cab, pounded on the window, and shouted to Schwendeman to slow down. About that time, Schwendeman lost control of the truck.

Schwendeman said he was driving "normally" at 35 to 40 m.p.h. when he moved onto the right shoulder to allow an oncoming car to pass; that his tires got stuck in the gravel; and "having driven the truck in lots of similar conditions", he accelerated to attempt to regain control. Eighty-five feet from where he left the road, he hit a power pole owned by Puget Power. The truck spun around, traveled an additional 80 feet, rolled onto its side, and then continued on for another 30 feet before coming to a stop. As a result of the accident at least one person was seriously injured.

Schwendeman left the scene of the accident and did not return until later. The officer who investigated the accident determined that before leaving the road's surface Schwendeman's truck was traveling at an extreme angle in relation to the shoulder. The officer indicated the truck went into a side slip before it went onto the shoulder. An expert for the County testified that Schwendeman was traveling at a minimum speed of 43 m.p.h. at the time the truck hit the pole and that the truck had been traveling at a higher rate of speed when it initially left the roadway. Experts for Schwendeman opined the truck was traveling at a lesser speed.

A separate criminal action was filed as a result of this accident. Schwendeman was convicted of two counts of vehicular assault. That verdict required the jury to find that Schwendeman's driving was the proximate cause of the bodily injury and that his driving was reckless. Reckless is defined as driving in a rash or heedless manner, and being

indifferent to the consequences. WPIC 90.05; *see State v. Bowman*, 57 Wn.2d 266, 270-71, 356 P.2d 999 (1960).

The case here began as a civil suit filed by Richard Medrano, one of the injured passengers, against Schwendeman. In Schwendeman's answer he specifically alleged as affirmative defenses the negligence of the County as to the design and maintenance of the road and the negligence of Puget Power as to the positioning of the power pole. Medrano amended his complaint adding the County and Puget Power as well. Additionally, Schwendeman cross-claimed against the County and Puget Power. In response, the County and Puget Power brought on a motion for summary judgment.

Schwendeman correctly contends that the County has a duty to maintain its highways in a reasonably safe condition for its users. He is also correct when he argues that Puget Power has a duty to place its poles in such a manner so as not to interfere with the public use of the highway. Schwendeman claims the trial court erred in granting summary judgment after he presented the court with the affidavits of experts supporting his claims that the County and Puget Power breached these duties.

However, the summary judgment granted to the County and to Puget Power was based on the lack of "legal causation", not on whether there was a material question of fact concerning the breach of a duty owed to Schwendeman or others by the County and Puget Power.[1] The County and Puget Power assumed for the sake of the argument on summary judgment that the design, construction, and maintenance of the road and shoulder and the placement of the power pole may have contributed as a "cause in fact" of the accident. Further the County and Puget Power recognize the existence of their respective duties to keep the roadways in a reasonably safe condition for persons using them and to place poles in a manner to protect against what may happen to a reasonably prudent driver. *See Wojcik v. Chrysler*

---

[1]Schwendeman does not address the issue of legal causation in his brief on appeal, but continues to argue there are issues of material fact.

*Corp.*, 50 Wn. App. 849, 854, 751 P.2d 854 (1988); *Klein v. Seattle*, 41 Wn. App. 636, 639, 705 P.2d 806, *review denied*, 104 Wn.2d 1025 (1985). However, the County and Puget Power claim that regardless of a duty and a possible breach thereof, Schwendeman's reckless driving was an intervening cause breaking any causal connection, and thus the alleged failure in the design and maintenance of the road and the location of the power pole are too attenuated to be considered a legal cause of the accident. *See Cunningham v. State*, 61 Wn. App. 562, 571-72, 811 P.2d 225 (1991); *Braegelmann v. County of Snohomish*, 53 Wn. App. 381, 384, 766 P.2d 1137, *review denied*, 112 Wn.2d 1020 (1989); *Klein v. Seattle*, 41 Wn. App. at 639; *Kristjanson v. Seattle*, 25 Wn. App. 324, 606 P.2d 283 (1980).

■■ "There are two elements to proximate cause: cause in fact and legal causation." *Cunningham*, 61 Wn. App. at 570 (citing *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985)). Cause in fact concerns the actual "but for" consequences of an act — the physical connection between an act and an injury. *Hartley v. State*, 103 Wn.2d at 778; *see also King v. Seattle*, 84 Wn.2d 239, 249, 525 P.2d 228 (1974). Legal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend. *Cunningham*, 61 Wn. App. at 570. *See also Hartley v. State*, 103 Wn.2d at 779; *King v. Seattle*, 84 Wn.2d at 250. The focus is whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability. *Hartley v. State*, 103 Wn.2d at 779-81. Legal cause "involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact"; *i.e.*, whether considerations of logic, common sense, justice, policy and precedent favor finding legal liability. *Hartley v. State*, 103 Wn.2d at 779.

■ In the criminal action filed as a result of the accident, Schwendeman's driving was determined to be reckless and a proximate cause of the accident. Now, in this civil appeal, Schwendeman contends that he was driving in a normal

and safe manner and that "but for" the improper maintenance of the shoulder and the placement of the power pole the accident would not have happened. However, he is collaterally estopped from retrying the claim about his negligent driving. "[T]he doctrine of offensive collateral estoppel is applicable where defendants in civil cases have been previously convicted of criminal charges after trial." *Fahlen v. Mounsey*, 46 Wn. App. 45, 50, 728 P.2d 1097 (1986) (citing *Maicke v. RDH, Inc.*, 37 Wn. App. 750, 683 P.2d 227, *review denied*, 102 Wn.2d 1014 (1984); *Seattle-First Nat'l Bank v. Cannon*, 26 Wn. App. 922, 615 P.2d 1316 (1980)), *review denied*, 107 Wn.2d 1031 (1987). Although Schwendeman is the plaintiff on cross claims and not the defendant in the civil suit here, the rationale for the use of the doctrine of collateral estoppel is the same. Schwendeman had a full and fair opportunity to litigate the issue of his reckless driving in the criminal case, and application of the doctrine does not work an injustice upon him under the circumstances. *Safeco Ins. Co. v. McGrath*, 42 Wn. App. 58, 62, 708 P.2d 657 (1985), *review denied*, 105 Wn.2d 1004 (1986).

The County and Puget Power argue that Schwendeman's driving rose to a level of extreme negligence or carelessness at least equal to that found in the cases of *Cunningham* (no legal causation where driver was intoxicated, speeding and inattentive), *Braegelmann* (no legal causation due to extreme negligence of a speeding and intoxicated driver), *Klein* (no legal causation when speeding driver crossed center line), and *Kristjanson* (no legal causation when driver was intoxicated, speeding and crossed center line).

Two cases have held that the negligent action/conduct of the drivers in each case was not so significantly negligent that the conduct could, as a matter of law, be said to be the sole legal cause of the accident. *Stephens v. Seattle*, 62 Wn. App. 140, 144, 813 P.2d 608, *review denied*, 118 Wn.2d 1004 (1991); *Wojcik v. Chrysler Corp.*, 50 Wn. App. 849, 751 P.2d 854 (1988).

In *Stephens v. Seattle, supra,* this court held that even though a motorcyclist was estimated to be greatly exceeding the speed limit there was a material question of fact as to whether this conduct was the sole proximate cause of the accident given the unmarked jog and/or realignment of the roadway at an intersection where the motorcyclist hit the curb and sustained grave injuries. Similarly, in *Wojcik v. Chrysler Corp., supra,* this court held that there were unresolved factual issues regarding the County's breach of its duty to maintain a road in a reasonably safe condition where there were allegations that the roadway was negligently striped and that the shoulder was improperly maintained. However, the *Wojcik* court did not discuss or consider the "legal causation" prong of proximate cause in its opinion. The opinion turned on whether or not there was a material question of fact.

We believe the *Stephens* and *Wojcik* cases can be distinguished because in neither case did the driver's negligent conduct rise to the level found here. In those cases there was no criminal trial which found the driver to be criminally reckless.

▮▮ We conclude that neither logic, common sense, justice, nor policy favor a decision that would subject the County and Puget Power to legal liability on these facts. *See Hartley v. State,* 103 Wn.2d at 779. The County and Puget Power should not be required to protect against the consequences of criminally reckless drivers. The factual basis for this determination is undisputed, that being Schwendeman's conviction of vehicular assault which required a finding of recklessness.

The question is whether, as a matter of policy, the connection between the defendant's acts and their ultimate result is "too remote or insubstantial to impose liability." *Hartley v. State,* 103 Wn.2d at 781. Here it was Schwendeman's driving that was the legal cause of the accident. Considering his driving, the County's alleged improper maintenance of the

road and/or shoulder and the possible negligent placement of the pole by Puget Power are too remote to impose liability. The trial court was correct in granting the summary judgment.

SCHOLFIELD and FORREST, JJ., concur.